# Maryland Coal and Coke Company *v.* Pennsylvania Railroad Company, Appellant.

*Coal—Sales of—Price regulation—Fuel administration—Retroactive effect of Act of Congress of August 10, 1917—Lever Act.*

The order of March 27, 1918, issued by the United States Fuel Administration, under authority of the Act of Congress of August 10, 1917 (Lever Act) fixing the price of coal which had been sold at previous prices, subject to revision by the administration, is retroactive.

Where coal was appropriated under the authority of the Fuel Administration and bills rendered therefor, with the endorsement "Price is tentative only and subject to readjustment when revised price is authorized by the United States Fuel Administration" the subsequent adjustment by the Fuel Administration is retroactive, and the prices charged for the coal were adjustable accordingly.

In an action of assumpsit for the difference in the amount originally charged and the amount subsequently fixed by the Fuel Administration, a verdict for the plaintiff will be sustained.

Argued October 16, 1924.  Appeal, No. 66, Oct. T., 1924, by defendant, from judgment of C. P. Phila. Co., No. 4, Dec. T., 1919, No. 897, on verdict for plaintiff in the case of Maryland Coal and Coke Company v. Pennsylvania Railroad Company.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Assumpsit for coal seized under Lever Act.  Before FINLETTER, J., without jury.

The facts are stated in the opinion of the Superior Court.

The trial judge found in favor of the plaintiff. Defendant appealed.

*Errors assigned* were refusal of various requests for conclusions of law and the judgment of the court.

*Francis B. Biddle,* of *Barnes, Biddle and Morris,* for appellant.

*Arthur S. Minster,* for appellee.

OPINION BY PORTER, J., February 27, 1925:

This action was brought by the plaintiff to recover of the defendant the sum of 60 cents per ton on 2,026.90 net tons of coal requisitioned by the Pennsylvania Railroad from and including the 29th day of October, to and including the 31st day of December, 1917. The coal was requisitioned in pursuance of orders of the President and Fuel Administrator, issued under the authority of the Act of Congress approved August 10, 1917, known as the Lever Act, which authorized the fixing of maximum prices of fuel, "Allowing therefor the cost of production, including the expense of operation, maintenance, depreciation and depletion, and adding thereto a just and reasonable profit." The plaintiff recovered a judgment in the court below and the defendant appeals.

The statement by the plaintiff of its cause of action based its right to recover upon the provisions of the orders of the President and the Fuel Administrator. The contention of the defendant in the court below and the assignments of error here presented raised no question as to the validity of those orders, its contention being that under the proper construction of those orders the plaintiff is not entitled to recover. The defendant had paid for the coal at the going government price at the time it was requisitioned. The contention of the plaintiff is that that price was provisional, tentative only, and "subject to any revision which may be made

retroactively effective by the Fuel Administration," and that a higher price was subsequently fixed and made retroactively effective by the said authority. The plaintiff had rendered bills, for the coal requisitioned, at the going government price and had stamped on each bill "Price is tentative only and subject to readjustment when revised price is authorized by the United States Fuel Administration"; which bills the defendant had paid. It must be kept in mind that this coal was requisitioned by the defendant; if the orders of the Fuel Administration were invalid, then the uncontradicted evidence in the present case clearly established that the price which the plaintiff is now demanding was less than the cost of production and the market value of the coal, in the absence of government regulation, greater than the amount which the defendant will by this judgment be required to pay. These considerations eliminate from the case everything but the proper construction of the orders of the Fuel Administration.

The Lever Act was a war measure, its purpose being to insure the production of coal and its distribution at reasonable prices, "allowing therefor the cost of production including the expense of operation, maintenance, depreciation and depletion, and adding thereto a just and reasonable profit." It is a well known fact, of which it is proper to take judicial notice, that the cost of production, including the various elements specified by the act must vary in different parts of the country and in different mines located in the same district. The value of the coal in place varies greatly, owing to its quality, the cost of mining and its proximity to a market. These facts were recognized by the President in his original order of August 21, 1917, prescribing prices for bituminous coal at the mine in the several producing districts, varying from $1.95 in Indiana and Illinois, to $2 in Pennsylvania, to $3.05 in Oklahoma and $3.25 in Washington, which order expressly stated that the prices were provisional only and subject to reconsideration when the

whole method of administering the fuel supplies of the country had been satisfactorily organized. The President subsequently appointed Harry A. Garfield Fuel Administrator, with power to "supervise, direct and carry into effect the provisions of said act and the powers and authority therein given to the President so far as the same apply to fuel as set forth in said act." The Fuel Administration, on September 6, 1917, issued an order stating "It is not proposed to require efficiently operated mines to produce coal at a loss, but the burden rests upon applicants to show that the prices fixed in particular cases are unfair. . . . . . . Plans are under consideration and will soon be announced, whereby production may continue without affecting adversely the producer and the purchaser pending the examination of applications for revision of prices. Until this plan is announced, it is suggested that sales and deliveries be made at the prices fixed, with a stipulation to the effect that if prices are readjusted settlements shall be made accordingly." On October 9, 1917, an order was issued stating, in substance, that an adequate and regular supply of bituminous coal for use as railroad fuel by the Pennsylvania Railroad Company, and its operated companies is necessary for the national security and defense; and ordering that mines which were furnishing coal to said railroad under contract should "continue so to produce and sell such coal at the contract price;" (2) "The requirement not obtained from mines furnishing such or a greater percentage under the preceding paragraph shall be requisitioned from the remaining mines (located on the lines of the company) at the going government price, subject, however, to any revision which may be made retroactively effective." On October 27th the President issued an order which, taken in connection with an order of the United States Fuel Administrator of the same date, permitted an increase of prices by such mines as had granted a like increase in wages, subject to certain conditions which it is not necessary to specify.

On November 16, 1917, the Fuel Administration issued an order providing that thereafter consignments of coal should be made on the basis of a fixed price, not subject to revision on account of any subsequent regulation of prices; expressly stating "This ruling supersedes paragraph 4, publication 5." Publication 5 was the general order of September 6, 1917. There might be a question whether this amendment of the general order superseded the special order relating to coal requisitioned by the Pennsylvania Railroad Company, which latter was essentially specific and special. That question it is not, however, necessary to consider for the Fuel Administration, on November 26, 1917, having become convinced that the Maryland Coal & Coke Co., this plaintiff, was supplying coal to the Pennsylvania Railroad at a loss, as clearly indicated by the communication of the Fuel Administration to the plaintiff company, made the following order: "We hereby give you permission to continue to bill your coal to the Pennsylvania Railroad under said fuel order subject to revision." The appellant seems to have entirely ignored this special order in its brief, possibly upon the ground that it deems it invalid because special. We cannot regard the order as invalid. The act clearly indicated that it was the intention of Congress to vest in the executive discretion to determine the cost of production, including all its elements. The evidence clearly indicated that the mines of this plaintiff were operated in a thin vein, which became so thin in some parts of its territory that operations had to be abandoned. If the Fuel Administration was without authority to fix different prices and make different regulations for different mines and permit some mines to bill coal at prices which should be subject to subsequent investigation of the cost of production and the fixing of a final price, then the whole series of orders of the President and the Fuel Administration were invalid, for they all involved a classification of mines, and fixing of different prices. If that were the case then there was no

valid government price fixed and this defendant would be liable to pay the market value of the coal. The coal requisitioned by the defendant was taken when this plaintiff was expressly authorized to sell at provisional prices subject to revision by the Fuel Administration. The only remaining question is whether the Fuel Administration did subsequently make an order fixing a higher price which should be retroactively effective.

On February 16, 1918, the Fuel Administration announced a further classification of bituminous coal mines, which fixed the price for coal at mines in the district in which plaintiff's mines are located at $2.60 per ton, expressly stating that: "These prices do not include the 45 cent allowance for wage increase under the President's order of October 27, 1917." The price so fixed remained effective until April 1, 1918. On March 27, 1918, the Fuel Administrator issued a publication, which opened with an historical reference to some of the previous orders, permitting the sale and delivery of coal at prices subject to revision, the order of November 16, 1917, prohibiting consignments of coal at prices so subject to revision, and an order subsequently issued directing that sales and deliveries of coal to the United States government might be at prices fixed with a stipulation that if such prices were thereafter readjusted settlement should be made accordingly. It then proceeded to state that it now appeared to the Fuel Administration that questions had arisen as to the particular fixed price or prices which should govern the settlement of sales and deliveries of coal so made, and that fixed prices effective on and after a certain date should not be used as a basis for any such settlement, and that there was now no further occasion for the sale of any coal at fixed prices subject to revision, on account of subsequent price regulations. These recitals were simply for the purpose of setting forth the inducement which led the administrator to make the order which followed and the purpose intended to be accomplished by that

order.  The order was as follows: "The United States Fuel Administrator......Hereby orders and directs, that all settlements for coal sold and delivered prior to April 1, 1918, at fixed prices subject to revision on account of subsequent price regulation, shall be made on the basis of the fixed prices prevailing prior to April 1, 1918, and that any readjustment of prices of coal becoming effective on or after April 1, 1918, shall not be used as a basis for such settlement."  This order was most sweeping in its terms.  It was manifestly intended to fix the final price for all coal which had been sold at a provisional price, subject to revision on account of subsequent price regulation, and the price so fixed was that prevailing prior to April 1, 1918.  The order was clearly retroactive and it finally fixed the price of the coal which the defendant had requisitioned at prices subject to revision by the Fuel Administration.  The court below did not err in so holding.

The judgment is affirmed.